Morris et ux., Appellants, *v.* Halford (et al., Appellants).

Argued March 22, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and JONES, JJ.

May 21, 1945.

*Edward O. Spotts, Jr.,* for appellants, plaintiffs.

*Clyde P. Bailey,* with him *Bailey & Critchfield,* for appellants, Nos. 80, 82 and 83, appellees No. 79, R. E. Kaplan Co., Howard C. Lewis and Virginia Lewis, defendants.

*Sam R. Keller,* for appellee No. 79, Buck, defendant.

*Edward J. McGinness,* for appellee, Halford, defendant.

OPINION BY MR. JUSTICE LINN, April 9, 1945:

The plaintiffs, husband and wife, sued five defendants, averring that on or after April 20, 1943, they had "conspired . . . to oust the plaintiffs from the premises . . . rented by . . . [them] from the defendant Viola Halford, without due process of law, and to deprive . . . [them] of all of their personal belongings such as furniture, clothes, etc. . . . ."

Compulsory nonsuits, which the court refused to take off, were entered as to two defendants, Viola Halford and William Buck. There was a verdict against the remaining defendants, Kaplan Company, Howard

C. Lewis and Virginia Lewis, his wife. The court refused their motions for judgment n. o. v. and granted their motions for a new trial. We now have four appeals: one, by the plaintiffs from the refusal to take off the compulsory nonsuits, and separate appeals by each of the three defendants who assigned for error the refusal of their motions for judgment n. o. v.

The plaintiffs leased a four-room dwelling, 319 West Fifth Avenue, in McKeesport, from defendant Viola Halford, the lease being executed by her agent, William L. Buck, for the term of one month, beginning November 17, 1942, at $30.00 a month. The lease provided for a month-to-month continuation.

In March or April, 1943, the plaintiffs left McKeesport and went to Canton, Ohio, where Mr. Morris was employed, leaving their house at McKeesport locked and containing their furniture. The rent became in arrear more than a month. They returned on June 8th and found the house empty with a "for rent" sign on the front porch.

The averment of the conspiracy quoted above appears to charge two torts: (1) ouster from the premises, and (2) conversion of their personal property. As the plaintiffs were absent when the transactions of which they complain occurred, they relied largely on facts obtained by calling the defendants for cross-examination. To the extent that they were unable to contradict the evidence, so obtained, they are bound by the testimony elicited.

The evidence does not support the charges of conspiracy averred in the statement. While conspiracy may be proved by circumstantial evidence the evidence must be full, clear and satisfactory. The mere fact that several parties happened to exercise independent rights at or about the same time does not constitute an actionable conspiracy: cf. *Rosenblum v. Rosenblum*, 320 Pa. 103, 181 A. 583.

It will be convenient to deal first with Kaplan Company's appeal. That company had delivered furniture to the plaintiffs on a bailment lease on which the plaintiffs were in default. The contract provided ". . . and in case default be made of any of the payments as above agreed upon . . . the said bailee agree to forthwith deliver said property to said bailor or will permit the said bailor, or his agent, to enter into or upon any premises where any of such property may be and without let or hindrance take away the same, using such force as may be necessary in removal thereof."

Buck, the real estate agent, had been advised by the Kaplan Company of the bailment to the tenants. During plaintiffs' absence, the premises were opened, by whom does not appear. Buck learned that the premises were open and that children were playing in and about them. He gave notice of that fact to Kaplan Company, because, he testified, that was customary where notice of a bailment had been given. Kaplan Company then entered the house by the unlocked front door and repossessed the bailed property. Compare *North v. Williams*, 120 Pa. 109, 119, 13 A. 723. Having repossessed it, Kaplan sold part of it (what in the evidence is called a dinette and a glider) to the defendant, Lewis. Lewis obtained the lessor's permission to remove the property purchased. As Kaplan Company had the right to remove the property for default and, having repossessed it, had the right to sell it, the evidence does not support the averment of the conspiracy on the part of the five defendants to convert the bailed property to their own use. The Kaplan Company's motion for judgment n. o. v. should, therefore, have been granted.

There is no evidence that Kaplan Company took any property except what was the subject of the bailment. The suit, however, is to charge all the defendants with the conversion of all the property which the plaintiffs left in the house when they went to Canton early in

April. There is no evidence to connect the Kaplan Company and the defendant Buck with the taking of any property except the repossession of the bailment. With respect to the rest of the property the evidence is not so clear. There is a statement that when Mr. Lewis asked Mrs. Halford whether she had any objection to his removing the dinette and the glider purchased from Kaplan Company, he volunteered to clean up the place for her. There also is evidence to the effect that she directed him to clean up the place and told him he could have what furniture he wished. There is no evidence of distraint. At all events, Lewis cleaned up the place, taking for his own use several articles of furniture, throwing away part of the contents of the house which he said had no value, and allowing some to be carried away by others. We need not consider whether the evidence relating to the alleged conversion of the contents, other than that repossessed by the Kaplan Company, would support a verdict in a proper suit against Mrs. Halford and Mr. Lewis, but that tort is independent of the tort alleged to have been committed by the Kaplan Company and cannot be redressed in this suit. While Pa. R. C. P. 2232(d) provides for the elimination of parties where some only are found liable, the rule does not now aid the plaintiffs in their effort to recover for separate torts not legally connected with each other and committed by different parties. We must therefore sustain the action of the court in refusing to take off the compulsory nonsuits and the assignments of error complaining of the refusal of the motions for judgment n. o. v.

No. 79, judgment affirmed.

Nos. 80, 82 and 83, orders reversed and judgment here entered for the defendants severally.