## Lipman Estate

*Herbert S. Levin,* for exceptants.

*James J. Convery* and *LaBrum & Doak,* contra.

BOLGER, J., March 23, 1962.—The lone contestant, David Kaplan, legatee of a $300 pecuniary gift under the last prior will of this testator, whose estate is reputedly worth $32,000, has filed exceptions to the refusal of the hearing judge to award an issue d. v. n., complaining, inter alia, that the hearing judge erred in not finding that the testimony raised substantial disputes of material facts as to testator's testamentary capacity and as to undue influence having been exercised by Miss Margaret Buggy, the residuary beneficiary; he asserts that Miss Buggy was in a confidential relationship to testator who was in a mentally weakened condition, whereby the burden of proof shifted to her to sustain the will.

The will before us was the last of several professionally drawn wills, two of which were executed within less than one year prior to the one in dispute. The Allied Jewish Appeal, the residuary beneficiary under the same will as the contestant, and testator's only heir, a niece residing in California, and beneficiary of a $10,000 legacy under an earlier will, although served with notice of this proceeding, have neither appeared nor participated in the contest.

Following a series of lengthy hearings patiently conducted covering a period of four trial days, during which 524 pages of testimony were taken, numerous exhibits received and several conferences held, the hearing judge, in a carefully reasoned and comprehensive opinion of 28 pages, dismissed contestant's appeal. We are all satisfied that the action of the hearing judge was correct. There is little that we can profitably add to the learned hearing judge's opinion.

There are two salient features upon which we comment purely for emphasis. The first is the testimony concerning the preparation and execution of the disputed will. It was prepared by Bernard J. Duffy, Jr., Esq., a lawyer of mature experience and highly respected by this court. He had had previous dealings with testator, having drawn two prior wills for him. The present will was prepared by Mr. Duffy pursuant to testator's direct instructions. It was executed a few days later in the presence of three disinterested witnesses, the scrivener, another respected member of the bar, George D. Parrish, Esq., and the attending physician, Dr. Joseph Bregman. Their testimony respecting execution of the will, testamentary capacity and undue influence was unimpeached. There is no principle of law more deeply embedded in probate law than that which is peculiarly applicable here and which has been emphasized and reiterated repeatedly, i.e., ". . . where a will is drawn by decedent's attorney and proved by subscribing witnesses, *the burden of proving lack of testamentary capacity or undue influence* can be sustained *only by clear and strong* or compelling evidence; and this is especially so if proponents were corroborated by the attending physician": Citizens National Bank v. McCafferty, 383 Pa. 588, 596, and the host of cases cited therein.

In Citizens National Bank v. McCafferty, supra, the Supreme Court rejected appeals by both parties

from the judgment of the lower court, respecting the jury's verdict sustaining testatrix's will. In spite of the difference in procedure, we regard the cited case as controlling here because the issues were the same, whether the record disclosed substantial disputes as to material facts concerning testamentary capacity and undue influence involving alleged confidential relationship and weakened mind of testatrix. The factual situation there is practically a counterpart of the present case except that contestant there was the sole beneficiary under a prior will.

The precaution of the scrivener, Mr. Duffy, in obtaining from the attending physician, also a subscribing witness, before the execution of the will, his professional opinion as to the competence of testator does not, as contestant asserts, create any suspicion that the scrivener seriously questioned testator's competence. On the other hand, this action is most commendable and is in accordance with the best practice. It gives added weight to the testimony of the other subscribing witnesses.

A careful scrutiny of our record reveals that the only testimony presented by the contestant on any material fact pertaining to any or all of the allegations is of a fringe character and so far removed from the focal point of the case, which is the condition of testator and the events concerning the execution of the will on July 9, 1959, as to be totally insufficient to overcome the strong case presented by the testimony of the subscribing witnesses. Contestant's testimony is not at all clear or convincing.

In his misguided zeal to prove a confidential relationship between Miss Buggy, the residuary beneficiary, and testator, the contestant adopted a highly unusual tactic when he called Miss Buggy to the stand for cross-examination. This tactic backfired. Miss Buggy stated that she was the secretary to the presi-

dent of a baking company for many years and that she had met testator while he was working for the same company; that she and testator "lived in different worlds"; that she was merely "his tool"; that she knew nothing of the preparation and execution of the questioned will and did not learn of its contents until she was informed thereof by Mr. Duffy after testator died; likewise, she knew nothing as to any prior wills; that in pursuance of a power of attorney executed by Mr. Lipman, she deposited his checks and made withdrawals for him and performed services such as helping to relocate him in a nursing home and buying magazines and pajamas, etc., for him; that she visited him in the nursing home four or five times a week, all briefly, and that at these times testator, whom she testified was of strong and clear mind, regularly obtained from her a careful accounting of everything she did for him in a financial way. There can be no other conclusion but that her dealings with testator were on equal terms: Citizens National Bank v. McCafferty, supra.

Had this testimony been elicited from the witness under direct examination in defense of the will, her credibility might be at issue, but contestant having called her under cross-examination and failing to contradict any material part of her testimony as to confidential relationship, he is bound by it and we must accept it as true: Morris v. Halford, 352 Pa. 138 (1945). Not only does this testimony reveal that no confidential relationship existed between the witness and testator, but Miss Buggy clearly exonerated herself by a satisfactory explanation which contestant cannot now deny. The issue of confidential relationship thus disappears from the case and with it falls the accusation of undue influence because there is no substantial evidence of what the Supreme Court stated to be the elements of undue influence requisite to avoid

a will: "imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of the will": Stearne, J., in Ash Will, 351 Pa. 317. The testimony that testator had "confidence in her" does not prove a confidential relationship.

We are disturbed at the procedures available to this over-eager, tenacious, lone contestant, which he has employed in his effort to obtain a $300 bequest contained in testator's earlier will. He has not only delayed the distribution of this estate, but in doing so has absorbed the extensive time and efforts of the hearing judge as above outlined and now calls upon the court en banc to decide his exceptions. Although this proceeding is in rem (Stewart Estate, 358 Pa. 434), and contestant has attacked the validity of the entire instrument, whereby the contest must be heard to a conclusion (Carothers' Estate, 300 Pa. 185, 187) and other parties in interest can enter the contest at any time until a decision is rendered by this court (Miller's Estate. Miller's Appeal, 166 Pa. 97), nevertheless by reason of the inactivity of the other parties in interest who have been served, but who have not appeared, the issues might have been limited to contestant's legacy under his last prior will: Hunter's Pennsylvania Orphans' Court Commonplace Book, vol. 1, 2d ed. 355: "Contest of Part of Will. Will and Codicil." This resolution, looking to the elimination of this contestant as a party in interest, could have been accomplished by a pretrial conference, or at any time during the trial. Thereupon, the litigation could probably have been terminated by the proponent tendering to this lone contestant the $300 which he seeks and filing thereupon a petition for leave to compromise under

section 513 of the Fiduciaries Act of 1949 with notice to all other parties as well as to contestant. Should none of the other parties appear and contestant accept the offer, the hearing judge could then enter a decree dismissing the appeal and sustaining the will. If contestant were the only objector and had refused the offer of $300, the judge might well have directed the proponent to pay this sum to the clerk of the court on account for contestant and dismiss the appeal. This procedure with its requirement of notice to all parties in interest would have determined an important question: whether the parties nonparticipant in the contest are satisfied that the will is valid, which might be assumed because of their inactivity.

For the reasons stated, the exceptions are dismissed and the order of the hearing judge refusing to grant an issue d. v. n. is sustained.