IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Blair Anthony Hawkins, F.D. and   :
Hawkins Funeral Services, Inc.,   :
           Petitioners   :
  :
          v.   :   No. 925 C.D. 2016
  :   SUBMITTED: November 10, 2016
Bureau of Professional and   :
Occupational Affairs, State   :
Board of Funeral Directors,   :
           Respondent   :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE JULIA K. HEARTHWAY, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE HEARTHWAY           FILED: February 16, 2017


      Blair Anthony Hawkins, F.D. (Hawkins) and Hawkins Funeral Services, Inc. (Funeral Services) (together, Petitioners) petition for review of the May 12, 2016, final adjudication and order of the Bureau of Professional and Occupational Affairs, State Board of Funeral Directors (Board), which revoked Hawkins' funeral director's license and imposed a civil penalty in the amount of $90,000 on Hawkins. The Board also imposed a $10,000 civil penalty on Funeral Services and ordered it to cease and desist from the practice of funeral directing. We affirm.

On September 30, 2015, the Department of State (Department) filed a 10-count order to show cause with the Board, alleging various violations of the Funeral Director Law (Law).[1] On October 29, 2015, a hearing was scheduled for December 1, 2015. On November 24, 2015, Petitioners notified the Board that they had not been consulted regarding the scheduling of the hearing. The Board continued the hearing and requested the parties advise the Board of their availability for a two-day hearing between December 14, 2015 and January 15, 2016. The parties advised the Board of their availability and the Board, on December 9, 2015, scheduled the hearing for January 8, 2016. The parties thereafter exchanged pre-hearing statements, identified witnesses and exhibits, and participated in a pre-hearing conference on January 4, 2016. On January 7, 2016, the day before the hearing, Petitioners requested a continuance via email, until Hawkins' criminal charges were resolved. The Department opposed the continuance request. The Board denied the continuance, noting that Petitioners had previously been granted a continuance, had indicated that they were available for the hearing on January 8, 2016, had participated in a prehearing conference a few days prior, and had failed to identify an emergent reason for requiring a continuance.

A hearing was held on January 8, 2016, at which Petitioners renewed their request for a continuance until after the criminal charges were resolved. The Board again denied the continuance request. Therefore, Hawkins asserted his Fifth Amendment right against self-incrimination and did not answer any questions

---

[1] Act of January 14, 1952, P.L. (1951) 1898, *as amended*, 63 P.S. §§ 479.1 – 480.11.

presented to him at the hearing. The evidence presented by the Department is described below.

Hawkins' license to practice as a funeral director was issued on January 24, 1989, and is set to expire on February 1, 2018. Hawkins owns and operates Funeral Services, a corporation located at 5300 Vine Street, Philadelphia. Funeral Services was never licensed to operate as a funeral establishment in Pennsylvania. (Board's Adj., 5/12/16, at F.F. Nos. 1-8, at 4-5.)

On August 31, 2015, inspectors from the Department inspected the funeral establishment at 5300 Vine Street. The property had a sign that read "Hawkins Funeral Services, Inc." and indicated that Hawkins was the funeral supervisor. The inspectors found Hawkins inside the building at 5300 Vine Street. (*Id.*, F.F. Nos. 13-16, at 5-6.)

The inspectors also found a number of corpses. The embalmed remains of one person were in a bronze casket in a cluttered room containing coffins with garbage on the floor. Petitioners received this body on August 15 or 16, 2015. Petitioners contracted with the family of the deceased to provide funeral services at a rate of $2,362.00, which included cremation services. The family owed Petitioners $400.00 at the time of the inspection. The body had a colostomy bag attached, was dehydrated, was starting to decompose at the fingers and abdomen, and emitted the smell of decomposition. (*Id.*, F.F. Nos. 24-31, at 7-8.)

3

The inspectors found two additional corpses in the funeral home's preparation room, which was not air-conditioned. The temperature of the preparation room was between 85 and 90 degrees during the inspection. (*Id.*, F.F. Nos. 32-35, at 8.)

The inspectors discovered that one of these bodies was received on August 27, 2015, and directed for cremation. The family of the deceased had selected Petitioners to handle the remains and paid $850 by credit card to cremate the body. The inspectors found this man's unembalmed body on a gurney in the preparation room with a casket cover draped over it and a trash bag sitting on top of the body. The body was discolored, swollen, covered with maggots, gnats and flies, emitted an odor of decomposition, and was severely decomposed. (*Id.*, F.F. Nos. 36-44, at 8-9.)

Another corpse was in a body bag, with a trash bag on top of it. This body was discolored, swollen, covered with maggots, gnats and flies, emitted an odor of decomposition, and was decomposing. (*Id.*, F.F. Nos. 47-49, at 9.)

In the preparation room, the inspectors also found two plastic bags that contained human organs soaking in formaldehyde; dirty, rusty, and not disinfected embalming tools; blood on the wall; an embalming table covered with dried blood; and a bucket containing blood and a waxy substance that was possibly fatty tissue. (*Id.*, F.F. Nos. 50-54, at 10.)

4

After the Department presented its evidence, Petitioners argued that the Board denied them a full and fair hearing when it failed to continue the hearing until after the resolution of the criminal case, thus resulting in Hawkins' decision to invoke his Fifth Amendment right against self-incrimination before the Board.

The Board determined that it did not violate Petitioners' due process rights and that the evidence presented proved that Hawkins committed the nine alleged violations. Specifically, the Board concluded that the evidence showed that Hawkins acted with gross incompetency, negligence, and misconduct in carrying on the profession with regard to each of the deceased individuals;[2] engaged in gross immorality with respect to three bodies;[3] demonstrated disrespect toward the remains of a deceased person;[4] retained funds intended to pay for funeral goods and services in excess of the value of those services;[5] failed to promptly prepare and bury a body entrusted to his funeral establishment for that purpose and retaining the body at his establishment or elsewhere for more than ten days without first obtaining special permission of the Board;[6] and operated a funeral establishment without Board approval.[7]

---

[2] Count 1, in violation of section 11(a)(5) of the Law, 63 P.S. § 479.11(a)(5).
[3] Count 2, in violation of section 11(a)(9) of the Law, 63 P.S. § 479.11(a)(9).
[4] Counts 3-5, in violation of the Board's regulations at 49 Pa. Code § 13.202(2).
[5] Counts 6-7, in violation of the Board's regulations at 49 Pa. Code § 13.202(13).
[6] Count 8, in violation of the Board's regulations at 49 Pa. Code § 13.184.
[7] Count 9, in violation of the Board's regulations at 49 Pa. Code § 13.91.

5

The Board further determined that Funeral Services is subject to a civil penalty for practicing the profession of funeral directing without obtaining a valid license because Funeral Services never obtained a license from the Board.[8]

Initially, Petitioners contend that the Board abused its discretion and violated Hawkins' rights pursuant to the Fifth Amendment of the United States Constitution where he was unable to testify at the hearing because he had pending criminal charges against him. Petitioners further state that they were denied a full and fair hearing because Hawkins was unable to testify without incriminating himself.

In *Herberg v. Commonwealth, State Board of Medical Education & Licensure*, 42 A.2d 411, 412 (Pa. Cmwlth. 1982), a physician's medical license was revoked and the physician argued that during the hearing before the board, his rights pursuant to the Fourteenth and Fifth Amendments of the United States Constitution were violated. The physician invoked his Fifth Amendment right against self-incrimination so that his testimony before the board could not be used in a later criminal proceeding. *Id.* at 413. This Court determined that:

> '[T]here [is nothing] inherently repugnant to due process in requiring the doctor to choose between giving testimony at the disciplinary hearing, a course that may help the criminal prosecutors, and keeping silent, a course that may lead to the loss of his license.'

---

[8] Count 10, in violation of section 17(b) of the Law, 63 P.S. § 479.17(b) (Board may order $1000 civil penalty for practicing as a funeral director without a license), or section 13(a) of the Law, 63 P.S. § 479.13(a) (No person shall practice as a funeral director unless he has a valid license).

6

> …[A]bsent a finding that a physician was forced to testify against himself, a medical disciplinary board was not constitutionally required to stay its proceedings until the criminal prosecutions against the doctor were over.

*Id.* (citation omitted).

Here, Hawkins was called as a witness, chose not to testify, and was not forced to testify. Thus, Hawkins' Fifth Amendment right against self-incrimination was not violated because the Board honored Hawkins' choice not to testify. Further, due process rights are not violated simply because a decision on whether to testify is arduous. *See PSI Upsilon v. University of Pennsylvania*, 591 A.2d 755, 760 (Pa. Super. 1991). Hawkins made what was assuredly a hard decision not to testify; however, making this decision did not result in a violation of his due process rights. *See Herberg*, 42 A.2d at 413. The Board did not err or abuse its discretion when it held Hawkins' disciplinary hearing prior to his criminal proceeding, thus making Hawkins choose between testifying or asserting his privilege against self-incrimination.

Next, Petitioners contend that the Board abused its discretion when it revoked Hawkins' license and imposed an unduly harsh punishment. This Court may interfere with the Board's decision only if the Board flagrantly abused its discretion or executed its duties in a purely arbitrary manner. *Slawek v. State Board of Medical Education and Licensure*, 586 A.2d 362, 365 (Pa. 1991).

Pursuant to section 11(a) of the Law, the Board may "suspend or revoke a license of any applicant or licensee" for, among other things:

7

(5) Gross incompetency, negligence or misconduct in the carrying on of the profession.

(6) Violation of or non-compliance with the provisions of this act or the rules and regulations of the board.

\* \* \*

(9) Gross immorality.

63 P.S. § 479.11(a)(5), (6), and (9).

Here, the Board determined that Hawkins' conduct related to the three bodies, the condition of the bodies, the condition of the establishment, and the fact that Funeral Services was not licensed by the Board, amounted to violations of section 11(a) of the Law. A review of the record reveals that the Board's findings were supported by substantial evidence. Thus, the Board did not abuse its discretion when it revoked Hawkins' license for violations of the Law and regulations, as it is within the Board's discretion to do so. *See* 63 P.S. § 479.11(a).

Further, section 17(b) of the Law provides for a civil penalty up to $1000 "on any current licensee who violates any provision of this act." 63 P.S. § 479.17(b). However, section 2205 of the Act of July 2, 1993, P.L. 345 (Act), *as amended*, 63 P.S. § 2205, provides additional powers for boards and commissions within the Bureau of Professional and Occupational Affairs. Section 2205(b)(4) of the Act grants the Board the power "[t]o levy a civil penalty of not more than $10,000 per violation on any licensee . . . who violates any provision of the applicable licensing act or board regulation." 63 P.S. § 2205(b)(4). Thus, the Act gives the Board the authority to impose penalties that are ten times as great as possible penalties under the Law. However, the Board must choose between

8

imposing the civil penalty under the Law or under the Act; it cannot impose a civil penalty under both. 63 P.S. § 2205(c).

Here, the Board chose to impose civil penalties under section 2205 of the Act, 63 P.S. § 2205. The Board did not assess civil penalties under the Law. The Board did not abuse its discretion in imposing civil penalties pursuant to section 2205 of the Act. 63 P.S. § 2205.

Petitioners further argue that the penalty imposed was unduly harsh. Thus, Petitioners are asking this Court to substitute its judgment and discretion for that of the Board and impose a lessor penalty. That we are not permitted to do. "In the absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of the agency's action or into the details or manner of executing agency action." *Slawek v. Commonwealth, State Board of Medical Education & Licensure*, 586 A.2d 362, 365 (Pa. 1991). This Court may not "substitute its view of what i[s] reasonable for that of the agency." *Id.* Therefore, as long as the penalty was in accordance with the law, it is considered reasonable. *Id.* Because the Board's penalty was in accordance with the Act, it is considered reasonable.

Accordingly, we affirm.

_____
JULIA K. HEARTHWAY, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Blair Anthony Hawkins, F.D. and : 
Hawkins Funeral Services, Inc., : 
          Petitioners : 
           : 
          v. : No. 925 C.D. 2016
           : 
Bureau of Professional and : 
Occupational Affairs, State : 
Board of Funeral Directors, : 
          Respondent : 

# O R D E R

AND NOW, this 16th day of February, 2017, the order of the Bureau of Professional and Occupational Affairs, State Board of Funeral Directors in the above-captioned matter, is affirmed.

 

_____
JULIA K. HEARTHWAY, Judge