Opinion by
 

 Montgomery, J.,
 

 The plaintiff, Lanard & Axilbund, Inc., brought this action in trespass against the defendants, Frank G. Binswanger, Jr., Richard Calhoun and Binswanger Corporation, to recover damages for loss allegedly sustained by it due to the defendants wrongfully inducing Bue, Inc., the owner of certain commercial property located at Fourth and Willow Streets, Philadelphia, to breach a real estate contract it had with the plaintiff. The particular breach asserted was that Bue executed a lease of these Fourth and Willow Street premises through the defendant Binswanger Corporation as its agent to Charles Price at the time plaintiff’s exclusive agency contract with Bue was in effect. The individual defendant, Frank G. Binswanger, Jr., is president of such corporation, and the defendant Richard Calhoun is a salesman in its employ.
 

 After a trial without a jury Common Pleas Court No. 2 of Philadelphia rendered a decision in favor of the plaintiff against the defendant, Binswanger, individually, and the Binswanger Corporation; and assessed damages in the sum of $4,380, which included $2,190 as compensation for loss of commission and $2,-190 punitive damages. The court found in favor of
 
 *353
 
 defendant Calhoun against the plaintiff. Upon the dismissal of their exceptions to the verdict of the court because of a divided court en banc consisting of the trial judge and one other, defendants Binswanger and Binswanger Corporation appealed.
 

 The undisputed facts of the case are that the plaintiff was the exclusive agent of Bue, Inc., for the sale, or rental of the Fourth and Willow Street premises. The written agreement, dated February 4, 1964 . stated, inter alia, that until the “withdrawal of this agency, as hereinafter provided, no one shall offer said property for rent or sale but Lanard & Axilbund, Inc., and if leased or sold prior to the withdrawal of this agency, no matter by whom it shall be leased or sold, exclusive of the firms listed below, we agree to pay Lanard & Axilbund, Inc., a commission in accordance with the Schedule of Commissions as adopted by the Philadelphia Board of Realtors.”
 

 The schedule of commissions for the Philadelphia Board of Realtors set forth various rates based on a percentage of the rents or sale price received from the property, and recognized that there might be another broker involved who cooperated in closing a transaction. The commissions for a lease where the realtor did not collect the rents were five per cent of the rent for the first year, four per cent of the rent for the second year, and three per cent of the rent for the remainder of the term, payable at the execution of the lease. In the event there was a cooperating broker,, fifty per cent of the net commissions received by the. original realtor were suggested as the proper amount to be paid to such cooperating broker.
 

 In July or August of 1964 defendant Calhoun telephoned Mr. Arthur Balsam, a vice president of plaintiff, and advised him that he had a prospect to whom he wished to show the Fourth and Willow Street prop
 
 *354
 
 erty. No salesmen of plaintiff were available at the time, but Balsam arranged for a representative of Bue to show the premises to the prospect. Tbe prospect, Charles Price, saw the premises through this plan of appointment and ultimately executed a five-year lease, dated September 22, 1964, such lease being arrived at entirely through the efforts of Binswanger Corporation and the owner, Bue, Inc. The lease between the parties was prepared on the Binswanger lease form although the normal practice in the real estate business is to prepare the lease on the form of the broker originally representing the owner.
 

 On the day this lease was executed Bue communicated to plaintiff by telephone and confirming letter the fact that Price had leased the subject property and also offered plaintiff a commission for its assistance in bringing about the tenancy based on an amount equal to two and one-half per cent of each year’s gross rental payable during each month of the term of the lease and any renewals thereof. This letter further stated that, “It is understood that the gross monthly rental during the first year shall be $4,583.33; during the second year, $5000.00; and during the third to fifth years, $5250.00; ...” A similar letter was sent by Bue to defendant Binswanger Corporation on the same day agreeing to pay that company the same two and one-half per cent commission on each year’s rental. Plaintiff accepted this offer and under this arrangement will receive $7,600 in monthly payments by the end of the five-year term for which the lease was written. Under the terms of its original exclusive agreement with Bue, plaintiff would have been entitled to $10,820 in a lump sum at the time of the execution of the lease, according to the schedule of commissions adopted by the Philadelphia Board of Realtors where rents are not collected by the original broker. Of this
 
 *355
 
 amount it would have paid fifty per cent to Binswanger Corporation in accordance with the recommendation of the Board of Realtors, leaving it a net of $5,410.
 

 Plaintiff argues, however, that if it had negotiated the lease it would have been entitled to collect the rents and would have been entitled to the full commission of $15,200, from which it would have paid Binswanger Corporation under a long standing commission arrangement, not fifty per cent of the commissions received, but fifty per cent of the first year’s commission, forty per cent of the second, and thirty per cent of the third, fourth, and fifth years or a total of $5,410, leaving it $9,790 as its share. However, the agreement between it and Bue says nothing about the collection of rentals. It merely authorizes plaintiff to lease the premises. Therefore it was the right of Bue to collect the rentals, which it did. The schedule recognizes this by providing for a lump sum payment of the commission if the rents are not collected, and larger commissions payable on a monthly basis if they are collected. Therefore this argument asserted by the plaintiff is untenable and its position must be considered on the basis of a lump sum commission payable on the execution of the lease, since it had no right to manage plaintiff’s property and it performed no services in that regard.
 

 Bue, however, desiring to delay making payment of the full commission, made a written proposal to both plaintiff and defendant corporation to pay each of them two and one-half per cent of the net rentals as they were collected monthly during the five-year term of the lease. Both realtors accepted this offer and thereby each will receive $7,600 instead of $5,410 each would have received by dividing equally the lump sum which would have been due when a broker does not act as, collecting agent. Plaintiff argues that it was com
 
 *356
 
 pelled to accept this offer in order to preserve good relations with Bue and that it was its desire to do so.
 

 The tort of inducing a breach of contract in Pennsylvania follows the Restatement very closely. Section 766 of the Restatement, Torts, states that,
 
 .
 
 . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another, is liable to the other for the harm caused thereby.” This tort has been applied, although apparently not yet in Pennsylvania, in cases dealing with actions brought by one real estate broker against another for interfering with the contractual rights of the first under an exclusive agency agreement with an owner.
 
 Horn v. Seth,
 
 201 Md. 589, 95 A. 2d 312 (1953) ;
 
 Louis Schlesinger Co. v. Rice,
 
 4 N.J. 169, 72 A. 2d 197 (1950);
 
 Hornstein v. Podwitz,
 
 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1 (1930). See also
 
 Glazer v. Chandler,
 
 414 Pa. 304, 200 A. 2d 416 (1964);
 
 Dora v. Dora,
 
 392 Pa. 433, 141 A. 2d 587 (1958);
 
 Klauder v. Cregar,
 
 327 Pa. 1, 192 A. 667 (1937).
 

 The Supreme Court in
 
 Birl v. Philadelphia Electric Co.,
 
 402 Pa. 297, 301, 167 A. 2d 472 (1960), stated that “. . . the actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result.” The injury which plaintiff alleges is in the nature of joint liability imposed on the defendants because of their participation in inducing a breach of contract, and on Bue for the breach of its agency contract with the plaintiff. Such joint liability affords the plaintiff an election of remedies against either party for the amount of his loss. However, in this case the plaintiff agreed to and accepted the commission proposal of its client Bue.. Both by telephone
 
 *357
 
 and by confirming letter the plaintiff agreed to divide with the Binswanger Corporation a five per cent commission on the rentals to be received from the property, payable during the term of the lease. This commission arrangement was in lieu of its contract and right to receive a commission as called for by the Philadelphia Board of Realtors, namely, five per cent of the total rent for the first year, four per cent for the second year, and three per cent for the balance of the term, payable upon execution of the lease where the rent was not collected by the realtor, subject to giving fifty per cent, or an amount otherwise agreed upon, of the net commission received to the defendant corporation as cooperating realtor.
 

 The plaintiff asserts that this commission arrangement which it accepted was less advantageous than what it contractually could have received with defendant corporation as cooperating broker. The defendants contend, however, that by such an arrangement with Bue the plaintiff received much more than he would' have received under the rules of the Philadelphia Board of Realtors, which was the basis of compensation provided for in the owner’s agreement with the plaintiff, and that there was no commission division arrange^ ment as contended between the Binswanger Corporation and plaintiff. We do not have to decide whether plaintiff in fact benefited from the final commission arrangement reached with Bue as we find and so hold that this was the arrangement which it settled for, and it cannot now complain that it would have received more from the deal if not for the interference of the defendants.
 

 The contract between plaintiff and the property owners clearly contemplated that the property might be leased or sold by some person other than the plaintiff, in which event it was contractually provided that
 
 *358
 
 plaintiff would receive a commission by reason of its efforts as an exclusive agent. Accordingly, when the plaintiff accepted its two and one-half per cent commission after the lease was consummated, it modified that part of its agreement with Bue providing for a commission when the property was sold or leased by someone other than itself. There was no breach of the plaintiffs contract, and the plaintiff cannot now gain more than he bargained for by this action against the defendants.
 

 Furthermore, had there been no modification by plaintiff and Bue of the exclusive agency agreement as previously discussed, we fail to find any unlawful interference by defendants which would have created any cause of action in plaintiffs favor against them. The contract recognized the possibility of the owner or someone else leasing the property. Such an occurrence would not have affected plaintiffs right to the full commission provided for in the contract except as the schedule of the Board of Realtors might have otherwise provided or recommended. Although the schedule merely recommended an equal division of such comission between the exclusive agent and a cooperating broker, which recommendation might not have been followed, it did establish recognition of the fact that there was a privilege for other brokers to act, even when there was an active exclusive agency in another. Therefore defendant corporation’s act was not unprivileged. What separate arrangements it had with the owner Bue in no way interfered with plaintiff’s contract with Bue. It was only after plaintiff knew that Binswanger Corporation had acted under its privilege and secured Price as a tenant that plaintiff agreed with Bue to a modification of its contract rather than assert its full rights under it. In the cases relied on by plaintiff there was an interference. In our present one
 
 *359
 
 there was none. That is the distinction. On the contrary, the facts indicate cooperation between the two realty firms as contemplated by the schedule and rules of the Board of Realtors.
 

 Judgment reversed and awarded in favor of the appellants, defendants.
 

 Hoffman, J., concurs in part and dissents in part; he would refuse punitive damages but affirm as to compensatory damages.