412 A.2d 466

THOMPSON COAL COMPANY and Leroy Thompson, Appellants,

v.

PIKE COAL COMPANY, Ralph S. Thompson, Clearfield Bank and Trust Company, George Scott and Clifford Johnston, Appellees.

Supreme Court of Pennsylvania.

Argued March 8, 1979.

Decided June 1, 1979.

200

John M. Elliott, Constance B. Foster, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, for Thompson Coal Co. and Leroy Thompson.

G. Donald Gerlach, Robert W. Watson, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, for Clearfield Bank and Geo. Scott.

Richard C. Angino, Kenneth D. Hoch, Hurwitz, Klein, Benjamin & Angino, Harrisburg, for Clifford Johnston.

James L. Jubelirer, State College for Pike Coal Co. and Ralph Thompson.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellants argue that the Court of Common Pleas of Clearfield County erred in granting defendant-appellees' motions for summary judgment, because, appellants allege,

there existed genuine issues of material fact as to each appellee. The Superior Court affirmed the order of the Court of Common Pleas in a *per curiam* order without an opinion. This Court granted review and after consideration of the briefs of the respective parties and oral argument, we share the view that the trial court reached the correct result.[1]

Appellant, Leroy Thompson (Leroy) and appellee, Ralph S. Thompson (Ralph), are brothers who were formerly associated in the Thompson Coal Company until they parted company in October, 1965. At that time, Ralph left Thompson Coal and formed the Pike Coal Company. Both brothers desired to obtain ownership of the surface and subsurface rights in the tract of land known as the "Kreska Tract."[2] The surface rights were owned by Adolph Kreska. The coal and other mineral rights in the Kreska Tract were owned by Harry Boulton, Harold J. Boulton and Raymond J. Hess, each owning an undivided one-third interest. On May 15, 1965, Leroy leased the mining rights under the Kreska Tract from the three subsurface rights owners under a year-to-year lease which the parties agreed to extend to March 1, 1975.

In August of 1972, Adolph Kreska sold the surface rights to Ralph. Ralph began mining operations, but ceased these operations upon being informed by his attorney, Clifford Johnston, that he owned less than all of the rights in the Kreska Tract. Ralph thereafter began efforts designed to purchase the outstanding rights to the Kreska Tract. On August 27, 1974, George Scott, the surviving executor of the Estate of Harry Boulton, sold the estate's one-third interest in the mineral rights underlying the Kreska Tract to Ralph,

1. This Court has jurisdiction of this appeal pursuant to 42 Pa. C.S.A. § 724. Judge Campbell certified his ruling to the Superior Court as involving controlling questions of law. Pursuant to Section 501(b) of the Appellate Court Jurisdiction Act, July 31, 1970, P.L. 673, No. 233, art. V, § 501, 17 P.S. § 211.501 (Supp. 1978–79). *See* 42 Pa.C.S.A. § 702(b).

2. Modern open pit mining requires consent and approval of the owners of both the surface and subsurface rights.

"Subject . . . to a lease of said mineral rights to Thompson Coal Company. . . ." On the same date, Clearfield Bank and Trust Company and George Scott, co-guardians for Harold J. Boulton, sold their ward's one-third interest in the mineral rights to Ralph subject to the lease of Thompson Coal Company. The interest of both former owners in the lease to Leroy and Thompson Coal was assigned to Ralph at the time of the conveyance of the mineral rights. On September 10, 1974, Raymond J. Hess leased his mineral rights under the Kreska Tract to Ralph and cancelled his lease with the Thompson Coal Company, the cancellation to be effective March 1, 1975. In the above manner, Ralph, trading as Pike Coal Company, became sole owner of the surface and two-thirds of the subsurface rights, and lessee of the remaining one-third of the subsurface rights subject to the lease rights held by Leroy and Thompson Coal.

Appellants Leroy and Thompson Coal Company filed a civil action against Ralph, Pike Coal Company, Clearfield Bank and Trust Company, George Scott and Clifford Johnston, alleging that the above appellees engaged in various acts constituting *inter alia*, negligence, conspiracy to defraud and tortious interference with contractual business relationships. The court of Common Pleas of Clearfield County granted a motion for summary judgment filed by Clearfield Bank and Trust Company, George Scott and Clifford Johnston as to the counts of negligence and tortious interference with business relationships, and granted summary judgment to Ralph, Pike Coal Company and Clifford Johnston on Count IV of the complaint which charged a conspiracy to defraud.[3]

The underlying theme of appellants' contentions is that the summary judgments entered pursuant to Pennsylvania Rule of Civil Procedure 1035 were improper because there remained genuinely disputed issues of material fact in

[3]. The trial court denied the remainder of the motion for summary judgment of appellees Ralph and Pike Coal Company, and that portion of the trial court's ruling is not before us in this appeal.

each of these instances. Rule 1019 requires that the material facts on which a cause of action or defense is based shall be stated in a concise and summary form. Rule 1035 permits the entering of a summary judgment only if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is granted only in the clearest of cases, where the right is clear and free from doubt. *Kotwasinski v. Rasner*, 436 Pa. 32, 258 A.2d 865 (1969); *Prince v. Pavoni*, 225 Pa.Super. 286, 302 A.2d 452 (1973). The moving party has the burden of proving the nonexistence of any genuine issue of fact. *Kent v. Miller*, 222 Pa.Super. 390, 294 A.2d 821 (1972); *Moore v. Zimmerman*, 221 Pa.Super. 359, 292 A.2d 458 (1972); *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 280 A.2d 570 (1971).

The counts sounding in negligence allege that Scott and Clearfield, as guardians of the Estate of Harold S. Boulton, and Scott, as executor of the Estate of Harry Boulton, breached various duties owed by them as fiduciaries.[4] It is argued by appellants that there is dispute as to whether these alleged breaches in fact occurred and that absent the resolution of. these factual issues the entry of summary judgment was improper. However, even if we were to accept the appellants' averments as fact, these fiduciaries violated no duty owed to the appellants who were merely lessees of the mineral rights. The Restatement (Second) of Trusts, § 200 (1959) states:

4. In their complaint, appellants averred that the guardians did not seek court approval before the sale, did not report the sale of the rights to the court, made no inquiry into the reasonableness of the sale (i. e., that the price received was grossly undervalued), acted hastily, and did not contact appellants who were lessees of the mineral rights at the time.

No one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust.

We have had occasion in the past to express our "grave doubt as to the standing . . ." of a stranger to object to the waste of trust assets. *Curtis Estate,* 437 Pa. 123, 126 n. 3, 261 A.2d 589, 591 n. 3 (1970) (dictum).[5] Since the court could properly find that a resolution of the disputed facts would, as a matter of law, establish neither the existence of a duty owed by the fiduciaries to the appellants nor a breach thereof, the entry of summary judgment as to these counts was entirely appropriate. *See Boyce v. U. S. Steel Corp.,* 446 Pa. 226, 285 A.2d 459 (1971); *Engel v. Parkway Co.,* 439 Pa. 559, 266 A.2d 685 (1970).

Appellants allege that summary judgment was wrongfully entered against them in favor of Clifford Johnston, Esquire, who represented Ralph in his successful negotiations and transactions to acquire the Kreska Tract. Appellants' claim against Johnston is essentially a suit in trespass for tortious interference with existing as well as prospective contractual relationships.

Under Count II of the Second Amended Complaint, it is alleged that Ralph, aided by his attorney, Clifford Johnston, engaged in wrongful acts, principally in the form of misrepresentations to the former holders of the rights, which induced them to convey the rights to him.[6] Thereafter, it is

5. To be distinguished are those cases in which a fiduciary is held accountable to a stranger to the fiduciary relationship when the fiduciary has breached a duty owed directly to that stranger. *See* Restatement (Second), Trusts, § 264 (1959). The obligation in these cases arises not from the trust relationship but rather from the fiduciary's duty to the third party. *See Clauson v. Stull,* 331 Pa. 101, 200 A. 593 (1938); *Miller v. Jacobs,* 361 Pa. 492, 65 A.2d 362 (1949); *Lawall v. Groman,* 180 Pa. 532, 37 A. 98 (1897) (the tort theory in this case was supported by evidence, which if believed by the finder of fact, would justify a finding that the defendant had gratuitously undertaken to perform the service on behalf of the plaintiff and had been negligent in the performance of that service).

6. In Paragraph 35 of their Second Amended Complaint, appellants allege, *inter alia,* that:

alleged that Johnston negligently advised Ralph that he had obtained all the rights to the property, when in fact there were other rights in the property outstanding held by other people, including Leroy. It is alleged that Johnston's mistake was due to the fact that he had not searched the title to the property far enough back in time, i. e., to the time when the interests in the tract were separated. It is further asserted that Ralph was forced to discontinue his mining operations until such time when he could obtain all of the rights to the Kreska Tract. The complaint describes Ralph's predicament at this point as being "in the untenable position of a cotenant with Plaintiff Leroy Thompson", Second Amended Complaint, Paragraph 46.

Thereafter, it is alleged that Clifford Johnston acted with the wrongful motive of covering his malpractice liability arising out of his allegedly negligent title search. Johnston's role in the initial purchase of the surface rights is never made more specific in the complaint. Specific allegations of Johnston's wrongful motive do not appear until it is alleged in Paragraphs 43–47 that Johnston discovered that Ralph owned less than all of the rights to the Kreska Tract. At this point, appellants ascribe the alleged wrongful motive to Johnston of attempting to avoid malpractice liability for an incomplete title search. In accord with the standard by which we interpret all inferences in favor of the non-moving party, *Ritmanich v. Jonnel Enterprises, Inc., supra*, we have assumed that Paragraph 35 adequately imputes a wrongful motive on the part of Johnston with regard to his alleged role in the purchase of the surface rights. Nevertheless, while appellants specifically allege that Ralph employed wrongful means, i. e., he made misrepresentations to the owners in obtaining the surface rights, the exact nature of

Defendant Ralph Thompson has expressed his ill-will towards Plaintiffs by wilfully engaging, individually and with Defendant Clifford Johnston in a series of acts, purposefully designed to disrupt Plaintiff's contractual relationships and business opportunities, including Plaintiffs' attempts to purchase the surface rights to the leasehold property from Adolph Kreska; to purchase outright or continue his lease as to the mineral rights on the leasehold property. . . .

Johnston's allegedly wrongful role in this initial transaction is far from clear from a reading of the pleadings. Finally, it is alleged that "[t]hrough their material misrepresentations to the guardians of Harold Boulton, Defendants Ralph Thompson and Clifford Johnston maliciously and intentionally interfered with Plaintiff Thompson Coal Company's continuing lease arrangement with Harold Boulton and Plaintiff's on-going attempts to purchase the leasehold property."

■ The law has long recognized that the wrongful inducing of a breach of contract or the encouragement of one not to enter into a contract or business relationship with another is an actionable tort. The Restatement of Torts, § 766 (1939) described this tort as follows:

. . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.

This section has been cited with approval in this jurisdiction. *See, e. g., Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974); *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971); *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964); *Birl v. Philadelphia*, 402 Pa. 297, 167 A.2d 472 (1960); *Dora v. Dora*, 392 Pa. 433, 141 A.2d 587 (1958); *Keifer v. Cramer*, 356 Pa. 96, 51 A.2d 694 (1947). *See generally*, Note, Malicious Procurement of Breach of Contract, 51 Dick.L.Rev. 123 (1947). *See also, Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175, 1181–82 (1978). (Adopting Restatement (Second) of Torts § 766). More recently, there has been a trend to separate those instances in which there has been an alleged interference with an existing contract right from instances in which the interference is charged with affecting prospective contractual relations. *See, e. g., Glenn v. Point Park College, supra* ; Restatement (Second) of Torts, § 766 (1977) (interference with existing contract); Restatement (Second) of Torts § 766B (1977) (interference with prospective rela-

tions). In this case, appellants contend that both theories of liability are present.

There are many cases in Pennsylvania which have examined alleged interferences with existing contracts. *See, e. g., Alder, Barish, Daniels, Levin & Creskoff v. Epstein, supra; Glazer v. Chandler, supra; Birl v. Philadelphia, supra; Dora v. Dora, supra; Keifer v. Cramer, supra; Klauder v. Cregar*, 327 Pa. 1, 192 A. 667 (1937); *Caskie v. Philadelphia Rapid Transit Company*, 321 Pa. 157, 184 A. 17 (1936); *Lanard & Axilbund, Inc. v. Binswanger*, 212 Pa.Super. 350, 242 A.2d 912 (1968); *Padden v. Local 90, United Ass'n of Journeymen Plumbers*, 168 Pa.Super. 611, 82 A.2d 327 (1951). Appellants have failed to set forth any contract right on their part which was injured through the actions of Johnston. Leroy's leasehold interest was honored; the conveyances were made subject to his lease. Therefore, further inquiry need be directed only to the question whether appellees intentionally intered with any prospective interest of appellants.

There are a number of Pennsylvania cases which have considered alleged interference with prospective business relations. *See, e. g., Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974); *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971); *Glazer v. Chandler, supra; Neel v. Allegheny County Memorial Park*, 391 Pa. 354, 137 A.2d 785 (1958). In *Glenn v. Point Park College, supra*, we established that four elements must appear in a complaint in order for the plaintiff to state a cause of action for intentional interference with prospective contractual relations:

(1) a prospective contractual relation;

(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual damage resulting from the defendant's conduct.[7]

7. In *Glenn v. Point Park College*, supra, we stated:

In discussing the elements of the tort of inducing a breach of contract or a refusal to deal, as formulated in § 766 of the Torts

Defining a "prospective contractual relation" is admittedly problematic. To a certain extent, the term has an evasive quality, eluding precise definition. It is something less than a contractual right, something more than a mere hope. Nevertheless, a working definition of the term is provided by *Glenn v. Point Park College, supra,* 441 Pa. at 480–81, 272 A.2d at 898–99, wherein it was stated that:

> . . . anything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. This must be something more than a mere hope or the innate optimism of the salesman. As the Superior Court of New Jersey has put it, " * * * the rule to be applied * * is that the broker may recover when the jury is satisfied that but for the wrongful acts of the defendant it is *reasonable probable* that the plaintiff would have effected the sale of the property and received a commission." *Myers v. Arcadio, Inc.,* 73 N.J.Super. 493, 497, 180 A.2d 329, 331 (1962). This is an objective standard which of course must be supplied by adequate proof. (footnote omitted).

■ If we are to view the alleged transactions in an objective light, we cannot agree with appellants that there was either a reasonable probability that the lease would be continued after March 1, 1975, or that there was a reasona-

Restatement, our Court has stated that "the actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result." *Birl v. Phila. Electric Co.,* 402 Pa. 297, 301, 167 A.2d 472 (1960). Underlying these requisites, of course, is the existence of a contract or of a prospective contractual relation between the third person and the plaintiff. Thus in this case the questions are whether the complaint discloses (1) a prospective contractual relation between Sheraton and plaintiffs, (2) the purpose or intent to harm plaintiff by preventing the relationship from occurring, (3) the absence of privilege or justification on the part of the actor (appellee), and (4) the occurrence of actual harm or damage to plaintiff as a result of the actor's conduct. Cf. *Locker v. Hudson Coal Co.,* 87 Pa. D. & C. 264, 267 (C.P. Lackawanna Co., 1953). 441 Pa. at 479–80, 272 A.2d at 898.

ble probability that the outstanding rights in the Kreska Tract would eventually be owned by appellants. Certainly, as lessees of a year-to-year lease, appellants arguably may have had some expectation that the lease would be renewed; nevertheless, the fact that the parties agreed to extend this year-to-year lease only until the specifically mentioned date of March 1, 1975 would provide no reasonable basis for either party to expect a perpetuation of the leasehold beyond that point or the acquisition of title to the property interests therein. Accepting as true all of appellants' averments, therefore it cannot be concluded that Johnston's efforts in obtaining for Ralph the rights to the Kreska Tract defeated any reasonably probable rights of appellants.[8]

The trial court entered summary judgment on the conspiracy charges against Ralph, Pike Coal Company and Clifford Johnston. The trial court originally entered summary judgment in favor of only Clifford Johnston on the conspiracy count. Thereafter, the trial court entered an amended order which in part entered summary judgment in favor of Pike Coal Company and Ralph as to the charge in Count IV, conspiracy to defraud.

Paragraph 92 of appellants' Second Amended Complaint, which incorporates by references all the collective wrongs allegedly committed by Johnston and the other defendants, states: "The acts set forth in paragraphs 31 through 91 were carried out in furtherance of a preconceived plan of Defendants Ralph Thompson and Clifford Johnston to injure Plaintiff's business relationships and reputation." The trial court reasoned that appellants failed to adduce material facts evidencing an unlawful intent on the part of Johnston and therefore found that appellants failed to present facts to support an essential element of a tortious conspiracy.

8. Because we have concluded that appellants have failed to establish facts demonstrating either a contractual or prospective business relationship, we need not pursue the question of whether appellants have alleged facts establishing that appellees' acts were unprivileged. *See Geary v. United States Steel, supra; Glenn v. Point Park College, supra.* (A plaintiff in an action for tortious interference with contractual or prospective business relations must aver in his complaint that the interference was unprivileged).

■■■ To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. *See Landau v. Western Pennsylvania National Bank,* 445 Pa. 217, 282 A.2d 335 (1971); *Fife v. Great Atlantic and Pacific Tea Co.,* 356 Pa. 265, 52 A.2d 24 (1947); *Bausbach v. Reiff,* 244 Pa. 559, 91 A. 224 (1914); *Baker v. Rangos,* 229 Pa.Super. 333, 324 A.2d 498 (1974). Proof of malice, *i. e.,* an intent to injure, is essential in proof of a conspiracy. *Miller v. Post Publishing Co.,* 266 Pa. 533, 110 A. 265 (1920); *Miller v. Harvey,* 215 Pa. 103, 64 A.2d 330 (1906); *Irvine v. Elliott,* 206 Pa. 152, 55 A.2d 859 (1903). This unlawful intent must be absent justification. The test was stated in *Rosenblum v. Rosenblum,* 320 Pa. 103, 108–09, 181 A. 583, 585 (1935):

> Assume that what is done is intentional, and that it is calculated to do harm to others. Then comes the question, Was it done with or without "just cause or excuse"? If it was bona fide done in the use of a man's own property * * * such legal justification would * * * exist not the less because what was done might seem to others to be selfish or unreasonable. * * * But such legal justification would not exist when the act was merely done with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights.

There are no facts of record which indicate that Johnston acted solely to injure appellants. To the contrary, there are many facts which indicate that Johnston acted solely to advance the legitimate business interests of his client and to advance his own interests. Pennsylvania Rule of Civil Procedure 1019(a) requires that: "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." "The purpose of the rule is to require the pleader to disclose the 'material facts' sufficient to enable the adverse party to prepare his case." *Landau v. Western Pennsylvania National Bank, supra,* 445 Pa. at 225, 282 A.2d at 339; *Smith v. Allegheny County,* 397 Pa. 404,

155 A.2d 615 (1959). Averments of a conspiracy are easily made;[9] however, in the instant case, as in the *Landau* case we have previously mentioned, there has been a failure to present material facts to support the bald accusations of a conspiracy. "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Fife v. Great Atlantic and Pacific Tea Co., supra,* 356 Pa. at 267, 52 A.2d at 39; *Morris v. Halford,* 352 Pa. 138, 42 A.2d 411 (1945).

 Appellants fail to indicate any fact, and our review of the record fails to evince any fact, which would substantiate the allegation that Johnston combined with Ralph and Pike Coal with the unlawful intent to injure appellants. Summary judgment, therefore, was properly entered on the conspiracy charge involving Johnston because appellants failed to raise a genuine issue of material fact.

 Once the conspiracy charge against Johnston was eliminated, the conspiracy charges against Ralph and Pike Coal necessarily failed as a matter of law. A conspiracy requires at least two conspirators. *Landau v. Western Pennsylvania National Bank, supra; Fife v. Great Atlantic and Pacific Tea Co., supra; Bausbach v. Reiff, supra; Collins v. Cronin,* 117 Pa. 35, 11 A. 869 (1887). *Cf. Commonwealth v. Smythe,* 245 Pa.Super. 75, 369 A.2d 300 (1976); *Commonwealth v. Turchetta,* 193 Pa.Super. 376, 165 A.2d 118 (1960); *Commonwealth v. Salerno,* 179 Pa.Super. 13, 116 A.2d 87 (1955) (in a charge for criminal conspiracy, where there are only two conspirators and one is acquitted, the other cannot be tried or convicted). Furthermore, there could have been no conspiracy between Ralph and Pike

9. In *Benford v. Sanner,* 40 Pa. 9, 17 (1861), Justice Strong observed: The humane presumption of the law is against guilt, and though a conspiracy must ordinarily be proved by circumstantial evidence, yet it is not to be forgotten that the charge of conspiracy is easily made, and that in a race between creditors [or between competitors] suspicion, possibility of guilty connection, is not to be received as proof in such a case, and especially in such a case, however, when the connection is proved, the acts and declarations of others become evidence against the party accused.

Coal . To hold that Ralph could have entered into an illegal agreement with the legal entity of which he was sole stockholder, director and officer would be without legal or rational basis. Summary judgment was therefore properly entered as to Ralph and Pike Coal on the conspiracy charge.

■■■ In conjunction will all of the above claims, appellants argue that summary judgment cannot be granted when the plaintiff's case rests upon oral proof which is disputed. To support this proposition, appellants cite *Bremmer v. Protected Home Mutual Life Ins. Co.*, 436 Pa. 494, 498, 260 A.2d 785, 787 (1970), which states:

> Additionally, it has long been the rule in Pennsylvania that where the testimony of the party having the burden of proof is oral, the credibility of that testimony is always for the jury: *Kopar v. Mamone*, 419 Pa. 601, 215 A.2d 641 (1966); *Exner v. Safeco Ins. Co. of America*, 402 Pa. 473, 167 A.2d 703 (1961); *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959); and *Nanty-Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). As we stated in *Nanty-Glo Borough v. American Surety Co.*, supra, 309 Pa. at 238, 163 A. 524, quoting from *Reel v. Elder*, 62 Pa. 308, 316 (1869): "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence." Rule 1035 did not and was not intended to change the law in this respect.

In *Bremmer*, it was alleged that an insured had procured a policy of insurance through false and misleading information provided on the application for that policy. The issue was one of credibility and the trial court erred in entering summary judgment because the issue of credibility was clearly a matter for the jury, and not the court, to determine. We have no credibility issue here. Assuming everything that appellants argue is accepted as pristine truth, appellants fail to make out a prima facie case *as a matter of*

*law,* not as a matter of fact. As a tenant, Leroy' was owed no duty of care by the guardians of his landlord as to the disposition of the legal right to the minerals. As we stated previously, Leroy's rights as a tenant were honored; the conveyances of the legal rights were all made subject to his leasehold interest.

■ If credibility is in issue, oral proof requires the jury's consideration and prevents the entering of a summary judgment. But if plaintiff fails to establish a prima facie case, the mere fact that his proof is oral does not provide a basis for placing the issue before a jury. *Bremmer* obviously did not contemplate conferring upon oral proof any such sacrosanct quality.

The order of the Superior Court affirming the orders of the Court of Common Pleas of Clearfield County is hereby affirmed.

LARSEN, J., filed a dissenting opinion.

MANDERINO, J., notes his dissent.

LARSEN, Justice, dissenting.

I dissent; summary judgment should not have been granted. There are genuine issues of fact which should be resolved by a jury.