

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2008

# Brubaker Kitchens v. Brown

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4797

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Brubaker Kitchens v. Brown" (2008). *2008 Decisions.* Paper 1183.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1183

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4797/4996/5212
_____

BRUBAKER KITCHENS INC,

Appellant in No. 06-4797

v.

STEPHEN M. BROWN; DEAN GOCHNAUER;
RICHARD WELKOWITZ; MARK SCHIBANOFF;
ARCHITECTURAL KITCHENS INC.; IVY CREEK
CABINETRY, INC.; KITCHEN BROKERS INC;
ROBERT SCIGLIANO
_____

BRUBAKER KITCHENS, INC.,

v.

STEPHEN M. BROWN; DEAN GOCHNAUER;
RICHARD WELKOWITZ; MARK SCHIBANOFF;
ARCHITECTURAL KITCHENS INC.; IVY CREEK
CUSTOM CABINETRY, INC.; KITCHEN BROKERS INC;
ROBERT SCIGLIANO

ROBERT A. KLEIN*; BERKOWITZ KLEIN LLP*;
BRUBAKER KITCHENS, INC,

Appellants Nos. 06-4996/5212.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-6756)
District Judge: Honorable Juan R. Sanchez
_____

Argued

April 17, 2008

Before: SLOVITER, JORDAN, and ALARCON*, *Circuit Judges.*

(Filed May 21, 2008)
_____

Robert A. Klein   [ARGUED]
Berkowitz Klein
629 B Swedesford Road
Swedesford Corporate Center
Malvern, PA   19355

Frank R. Emmerich, Jr.   [ARGUED]
Conrad, O'Brien, Gellman & Rohn
1515 Market Street - 16th Fl.
Philadelphia, PA   19102
        *Counsel for Appellants*

Charles v. Curley   [ARGUED]
Halberstadt Curley
1100 East Hector Street - #425
Conshohocken, PA   19428
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

## I.      Introduction

Brubaker Kitchens, Inc. ("BKI") appeals from the August 15, 2006 Opinion and

Order of the United States District Court for the Eastern District of Pennsylvania granting
_____
*Honorable Arthur L. Alarcon, Senior Judge, United States Court of Appeals for the
Ninth Circuit, sitting by designation.

summary judgment in favor of defendant Mark Schibanoff.  BKI also appeals the District

Court's Opinion and Order, entered on November 1, 2006, imposing sanctions upon BKI's attorney, Robert Klein, Esquire, and his law firm, and the District Court's December 12, 2006 denial of a Motion for Reconsideration of the sanctions order.[1] We will affirm the District Court's entry of judgment in favor of Schibanoff and the imposition of sanctions against BKI's counsel.

## II.    Background

Rita Berkowitz is the president of BKI, a company that manufactures custom cabinetry. *Brubaker Kitchens, Inc. v. Brown*, No. 05-6756, 2006 WL 2381767, at *1 (E.D. Pa. Aug. 15, 2006) (*"Brubaker Summary Judgment"*). Schibanoff and Robert Scigliano are "principals of Kitchen Consultants, a sales and marketing company that purchased products from BKI in the past." *Id.* As a result of their business relationship with BKI, Schibanoff and Scigliano became friendly with two of BKI's former employees, Stephen M. Brown and Dean Gochnauer. *Id.* On December 19, 2005, Brown and Gochnauer, "both at-will employees, resigned from BKI to start a competing venture, Ivy Creek Custom Cabinetry, Inc." *Id.* Berkowitz was unaware of Brown's and Gochnauer's plan to form Ivy Creek. *Id.*

After Brown and Gochnauer resigned from BKI, Ron Laughman,[2] a truck driver

---

[1]The appeal of the November 1st and December 12th orders is also joined by Klein personally and his law firm. For ease of reference, however, we will generally refer to the appeal as BKI's.

[2]The record contains alternate spellings of this witness's name: "Laughman" and "Loffman". As did the District Court, we have chosen to use the former.

for BKI, told Berkowitz that Schibanoff was "involved" with the formation of Ivy Creek. *Id.* During her deposition, Berkowitz testified that she did not know how Schibanoff was involved with Ivy Creek.[3] *Id.* Schibanoff's deposition testimony reflects that he told

---

[3]The following excerpt, which bears on Schibanoff's alleged involvement, is taken from Berkowitz's deposition:

> Q. And then tell me again, what did Ron Loffman tell you about Mark Schibanoff?
> A. He told me that he was involved with it [Ivy Creek] and he overheard a conversation between Dean and Bob Scigliano.
> Q. And when Mr. Loffman told you that Mark Schibanoff was involved in it, did you ask him what his involvement was?
>
> A. No.
>
> Q. At any time have you done that?
>
> A. No.
>
> Q. To this day have you done that?
>
> A. No.
>
>                          * * *
>
> Q. And to this day do you believe that Mark Schibanoff is involved in Ivy Creek?
>
> A. Yes.
>
> Q. And how is he involved?
>
> A. I don't know.

*Brubaker Summary Judgment*, 2006 WL 2381767 at *1 (citing Berkowitz Dep. 253:9-255:1).

Brown and Gochnauer that Kitchen Consultants would buy products from Ivy Creek.[4]  *Id.*

As the District Court described it,

> [t]he commitment to market Ivy Creek's products is expressed in an August 6, 2005 letter that Schibanoff authored on Kitchen Consultants' letterhead. The letter reads, in relevant part:
>
> To whom it may concern,
>
> * * *
>
> We have worked with Steve Brown and Dean Gochnauer in various capacities and respect them both for their business and manufacturing talents.
> We have recently been made aware that Steve and Dean are opening their own custom cabinetry manufacturing corporation to be known as "Ivy Creek" and because of our previous relationship have committed to marketing their products to our existing accounts.

*Id.*

Schibanoff wrote this letter after he and Scigliano attended a dinner meeting arranged by Brown and Gochnauer during the summer of 2005.  *Id.* at *2.  "According to Brown, the purpose of the meeting was to discuss having Schibanoff and Scigliano eventually sell Ivy Creek's products."  *Id.*

---

[4]  Q. What was your involvement with respect to starting Ivy Creek?

[Objection raised by counsel]

A. I said good for you.

Q. Anything else?
A. We said that if they [Brown and Gochnauer]-that if they did go into business for themselves we would certainly buy from them.
*Brubaker Summary Judgment*, 2006 WL 2381767 at *1 (citing Schibanoff Dep. 61:2-11).

Schibanoff's company, Kitchen Consultants, had been a manufacturer's representative for BKI, but Berkowitz ended the relationship "'because she suspected Schibanoff was trying to steal [Brown and Gochnauer] away from [BKI] to form their own company.'" *Id.* (quoting Berkowitz Dep. 262:19-21). Even after the manufacturer's representative role was terminated, however, Kitchen Consultants continued to sell BKI's cabinetry for years. *Id.* (citing Berkowitz Dep. at 264:11-12). Schibanoff ultimately stopped "placing large orders with BKI ... and turned elsewhere for cabinetry" because, as Berkowitz herself acknowledged, the finish on a project that BKI had prepared for Schibanoff "just looked horrendous." *Id.* (citing Berkowitz Dep. at 248:16-19). After BKI mishandled that project, "the volume from Schibanoff went down significantly" and Kitchen Consultants gave BKI less than $1,000 worth of business during 2005.[5] *Id.* (citing Berkowitz Dep. at 249:10-11; 250:9-10).

On December 28, 2005, BKI filed a Complaint against Brown, Gochnauer, Richard Welkowitz and Schibanoff, alleging variously copyright infringement (Count I); breach of fiduciary duty (Count II); conspiracy (Count III); tortious interference with contractual relations (Count IV); tortious interference with prospective advantage (Count V); violation of Uniform Trade Secrets Act (Count VI); conversion (Count VII); inducement of breach of at-will employment (Count VIII); fraud (Count IX); and

---

[5] "Berkowitz conceded that, since Ivy Creek has become operational in 2006, Schibanoff's decision to place orders with it does not represent the loss of a BKI customer." *Brubaker Summary Judgment*, 2006 WL 2381767 at *2 (citing Berkowitz Dep. at 250:15-20).

procuring information by improper means (Count X). BKI filed its First Amended

Complaint on March 3, 2006, to cure its fraud claim after the District Court found that it

failed to comply with Federal Rule of Civil Procedure 9(b). On June 22, 2006, BKI filed

its Second Amended Complaint, adding other defendants, including Scigliano and Ivy

Creek.

On August 15, 2006, the District Court granted summary judgment in favor of

Schibanoff and against BKI on all claims that BKI had asserted against him, namely,

Count I, Counts III-V, Count VIII and Count X of the Second Amended Complaint.[6] *Id.*

at \*2. After the District Court granted summary judgment in Schibanoff's favor, it held a

hearing on his June 19, 2006 Motion for Sanctions pursuant to Federal Rule of Civil

Procedure 11.[7] The District Court set forth the following facts regarding

---

[6]On October 10, 2006, the District Court dismissed with prejudice the case as to all parties other than Schibanoff.

[7]Federal Rule of Civil Procedure 11 provides, in pertinent part:
   (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
   (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
   (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
   (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
   (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Schibanoff's sanctions motion:

> Brubaker's counsel consistently represented the inclusion of Schibanoff in the suit was based on Berkowitz's assertion Schibanoff, and his business partner, Robert Scigliano, acted in concert with Brown and Gochnauer to open Ivy Creek. This allegation was admittedly based on hearsay and speculation. During the hearing on the temporary restraining order, Berkowitz testified that, at the time the Complaint was filed, she based her belief Schibanoff was going into business with Brown and Gochnauer on a conversation she had with Ron Laughman. Although Berkowitz alleged Laughman led her to believe Schibanoff would be a partner in Ivy Creek, Laughman's deposition testimony does not support this account. To the contrary, Laughman explicitly stated Gochnauer told him Schibanoff simply promised to have work for Ivy Creek. Laughman shared this information with Berkowitz the day after Brown and Gochnauer left Brubaker. At the hearing, Berkowitz stated she had no personal knowledge whether Brown or Gochnauer asked Schibanoff to provide financial support for Ivy Creek and instead indicated her belief Schibanoff was involved with Ivy Creek was based on her history with Schibanoff. ... Shortly after the hearing, Brubaker reiterated its claims against Schibanoff in the First Amended Complaint.

*Brubaker Kitchens, Inc. v. Brown*, No. 05-6756, 2006 WL 3165010, at *1-*2 (E.D. Pa.

Oct. 31, 2006) (*"Brubaker Sanctions"*). The Court granted Schibanoff's Motion for

---

(c) Sanctions.
(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
Fed. R. Civ. P. 11(b) and (c)(1).

8

Sanctions on October 31, 2006 and entered its Order imposing sanctions on November 1, 2006. *Id.* at *3-*4.

BKI appealed the District Court's grant of summary judgment in favor of Schibanoff on November 9, 2006. On November 10, 2006, Klein and his law firm filed a Motion for Reconsideration of the Court's sanctions order, which was denied on December 12, 2006. *Brubaker Kitchens, Inc. v. Brown*, No. 05-6756, 2006 WL 3682180 (E.D. Pa. Dec. 11, 2006) (*"Brubaker Reconsideration"*). BKI then appealed the November 1st and December 12th orders.

## III.    Jurisdiction and Standards of Review

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.[8] We exercise plenary review over the District Court's grant of summary judgment, applying the same standard as the District Court. *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 156 (3d Cir. 1988). We review the District Court's Rule 11 determinations for abuse of discretion.

---

[8]On December 7, 2006, the Office of the Clerk of this Court notified counsel that the appeal from the District Court's imposition of Rule 11 sanctions would be submitted to this panel for possible dismissal because it appeared as though "the notice of appeal [was] taken from an order which is not final within the meaning of 28 U.S.C. Section 1291 ... ." (12/7/06 Ltr. at 1.) The District Court entered its Order imposing sanctions on November 1, 2006. Klein filed a Motion for Reconsideration on November 10, 2006, and filed his original notice of appeal from the District Court's November 1st Order on December 1, 2006. After the District Court denied the Motion for Reconsideration on December 12, 2006, he filed a new notice of appeal on December 22, 2006, appealing both the November 1st and December 12th orders, consistent with Federal Rules of Appellate Procedure 4(a)(4)(B)(i) and (ii). Therefore, we may exercise jurisdiction over BKI's appeal.

*Rogal v. Am. Broad Cos., Inc.*, 74 F.3d 40, 44 (3d Cir. 1996).

## IV. Discussion

### A. Merits of the Summary Judgment in Favor of Schibanoff

In its summary judgment opinion, the District Court noted that BKI was only asserting the counts pertaining to conspiracy, tortious interference with contractual relations, tortious interference with prospective advantage, and inducement of breach of at-will employment against Schibanoff.[9] *Brubaker Summary Judgment*, 2006 WL 2381767 at *2. The Court addressed each of those counts, focusing on the lack of evidence to support BKI's claims.

Before us, BKI argues that the "District Court usurped the function of the jury when it concluded that Schibanoff acted without malice when he conspired with Brown and Gochnauer ... ." (Appellant Summary Judgment Br. at 38.[10]) It also complains that the District Court "did not afford sufficient time for discovery ... ." *Id.* at 50.[11]

---

[9]The District Court treated "BKI's statement as a concession that, based on the evidence developed thus far in support of its claims, there is no genuine issue of fact on BKI's causes of action against Schibanoff for copyright infringement [Count I] and procuring information by improper means [Count X]." *Brubaker Summary Judgment*, 2006 WL 2381767 at *2.

[10]BKI submitted two separate briefs to this Court. One addresses only the District Court's order granting summary judgment in favor of Schibanoff, while the other is limited to the District Court's order imposing Rule 11 sanctions. In this opinion, we denote Brubaker's brief contesting the District Court's summary judgment order as "Appellant Summary Judgment Br." and its brief contesting the District Court's sanctions order as "Appellant Sanctions Br."

[11]Though BKI argues that the District Court "viewed the evidence produced by BKI in a negative light and incorrectly drew negative inferences," (Appellant Summary

Schibanoff responds that "there was no genuine issue of fact precluding summary judgment as to each claim against" him. (Appellee Summary Judgment Br. at 10.[12]) Schibanoff further responds that BKI is arguing for the first time on appeal "that the District Court failed to provide an extension of the discovery deadline," and asserts that "BKI did not raise this argument in its opposition papers, and did not file a motion pursuant to [Federal Rule of Civil Procedure] 56(f)[13] in response to Schibanoff's motion." *Id.* at 21.

With respect to the tort of civil conspiracy, the District Court correctly observed that "proof of malice (*i.e.*, an intent to injure) on the part of the tortfeasor is an essential element of the cause of action" under Pennsylvania law. *Brubaker Summary Judgment*, 2006 WL 2381716, at *3 (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)). Schibanoff argued that BKI had no proof of malice, either direct or circumstantial. *Id.* BKI conceded that it did not have direct evidence of malice, but

Judgment Br. at 38), after reviewing the record, we conclude that the District Court construed the evidence in the light most favorable to BKI, consistent with the summary judgment standard.

[12]Like Brubaker, Schibanoff submitted separate briefs on the issues of summary judgment and Rule 11 sanctions. In this opinion, we will refer to Schibanoff's brief regarding summary judgment as "Appellee Summary Judgment Br.," and we will refer to his brief regarding Rule 11 sanctions as "Appellee Sanctions Br."

[13]"Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R. Civ. P. 56(f).

argued that it was "entitled to prove Schibanoff's participation in a conspiracy with Brown and Gochnauer by circumstantial evidence such as Schibanoff's prior efforts to lure Brown and Gochnauer away from BKI, and Brown's and Gochnauer's diversion of, among other things BKI's trade secrets, know-how, employees and customers." *Id.* (citation omitted).

The District Court determined that there was no "full, clear and satisfactory" circumstantial evidence of a conspiracy, in other words, that there was no "adequate factual basis from which a jury [could] draw reasonable inferences of an agreement to harm the claimant." *Id.* (citing *Blank & Gottschall Co. v. First Nat'l Bank of Sunbury*, 50 A.2d 218, 220 (Pa. 1947)). Specifically, the District Court found as follows:

> First, there is no factual support for the assertion Brown and Gochnauer diverted "BKI's trade secrets, know-how, employees and customers." Second, although I credit Berkowitz's suspicion that Schibanoff tried to lure Brown and Gochnauer away from BKI several years ago and view this evidence in the light most favorable to BKI, no reasonable juror could infer malice from this event because it is too attenuated, both temporally and causally, from Schibanoff's dinner meeting with Brown and Gochnauer and his letter of reference on their behalf. Had Schibanoff ceased business relations with BKI immediately after Berkowitz terminated his company as a BKI representative, a factual issue might exist over whether Schibanoff was motivated by continued spite toward BKI. Here, though, it is undisputed that even after Schibanoff's company lost its position as a BKI representative, Schibanoff continued to place substantial orders for cabinetry from BKI and only ceased doing so after BKI botched the finish on a major project.

*Id.* The Court then said that, "[a]bsent the essential element of malice," it would not permit BKI's conspiracy claim against Schibanoff to go to a jury. *Id.* (citing *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2006)). On appeal, BKI has not persuasively

12

addressed the District Court's reason for granting summary judgment against BKI on the civil conspiracy claim, and we therefore agree with the District Court's conclusion.

Turning next to "BKI's claims for tortious interference with current and prospective contractual relations," which require "intentional," "improper" and "purposeful action on the part on the defendant specifically intended to harm" the existing or prospective relation, the District Court determined that "no reasonable juror could find Schibanoff's conduct actionable." *Id.* at *4 (citing *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. Ct. 2003); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978)). First, the Court noted that BKI was unable "to point to one customer relationship that [had] been disturbed by any act that could directly or inferentially be attributed to Schibanoff." *Id.* Second, the Court noted that "the most significant act on Schibanoff's part was authorship of the letter of reference wherein [he] committed his company to market Ivy Creek's products." *Id.* However, the Court concluded that there was "no factual support to render this conduct 'improper' ... ." *Id.*

Specifically addressing the propriety of Schibanoff's writing the letter of reference, the District Court characterized "the nature of Schibanoff's act" as "innocuous because it represents no more than an attempt to assist Brown and Gochnauer [to] obtain financing for Ivy Creek." *Id.* The Court also pointed out that there was "no evidence of an ulterior motive ... to injure BKI" and noted that "Schibanoff's support ... was not in derogation of any restrictive covenants [Brown and Gochnauer] had with BKI." *Id.* Further, while "Schibanoff's conduct [was] supportive" of Brown and Gochnauer, no

13

reasonable fact finder would find that it constituted interference, and "[Schibanoff's] ...

commitment to market Ivy Creek's products did not mean a loss of business to BKI." *Id.*

Finally, the Court found that it was "undisputed that there was no significant business

transacted between [BKI and Schibanoff] for approximately two years prior to

Schibanoff's authoring the reference letter." *Id.* Therefore, the District Court concluded

that "the claims for tortious interference with current and prospective contractual relations

cannot survive summary judgment." *Id.* BKI does not seriously dispute these facts and

has not brought any genuine issue of material fact to our attention. We therefore agree

with the District Court's grant of summary judgment to Schibanoff on BKI's tortious

interference claims.

Finally, the District Court found that BKI's claim against Schibanoff "for inducing

Brown and Gochnauer to leave the employ of BKI is also factually unsupported." *Id.* at

*5. Since Brown and Gochnauer were at-will employees, BKI needed to prove that they

were "systematically induced" to leave BKI by Schibanoff "for the sole purpose" of

destroying BKI. *Id.* (citing *Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 847

(Pa. 1957)). During her deposition, Berkowitz admitted that she had no evidence to

support this claim. *Id.* The District Court thus granted summary judgment in favor of

Schibanoff, saying:

> To summarize, Schibanoff discussed the formation of Ivy Creek over a
> dinner meeting with Brown and Gochnauer and subsequently issued a
> reference letter to assist them [to] obtain financing. These material facts are
> undisputed, and they represent Schibanoff's only involvement in the events

14

> that precipitated the lawsuit against him.  There are no issues for trial on the claims against Schibanoff ... .

*Id.*  We agree with that conclusion and will affirm the entry of summary judgment in favor of Schibanoff on the claims against him.

### B.        Allegedly Inadequate Opportunity for Discovery

BKI also argues that the District Court "prematurely" entered summary judgment and denied BKI an opportunity to present evidence that would support a finding of malice. (Appellant Summary Judgment Br. at 41.)  Specifically, BKI argues that an entry on Brown's computer made in 2000, which was unearthed after the close of discovery, demonstrates that "Schibanoff disliked BKI's owner back in 2000 but was unable to find a replacement supplier."[14]  *Id.*  BKI claims that it "wrote to the District Court ... to request additional time for discovery, but the District Court either ignored or refused [its] requests." *Id*. at 51.

---

[14]Even assuming that BKI's late-breaking evidence were properly a part of the record, it does not create a genuine issue of material fact that would undermine the Court's grant of summary judgment to Schibanoff.  The alleged "smoking gun" entry on Brown's computer, which is a business plan for an entity called "Architectural Custom Cabinetry," indicates that Gochnauer and Brown were approached by "two sizable (volume) dealers" who "have expressed a number of times their desire to have [Gochnauer and Brown] duplicate [BKI's] process and to properly manage a new company.  The[y] are dismayed at their current ownership."  (Appendix "App." at 107, 110.)  That two unnamed dealers approached Gochnauer and Brown regarding a business that would potentially compete with BKI does not provide an evidentiary basis for finding malice on Schibanoff's part with respect to the civil conspiracy claim, nor does it establish with respect to the tortious interference claims that Schibanoff engaged in intentionally improper conduct.  BKI's arguments are unpersuasive, and the District Court properly entered summary judgment in favor of Schibanoff.

15

We have reviewed the record citations that BKI proffers in support of its argument that the District Court unreasonably denied it discovery extensions, and we have independently searched elsewhere in the record. We are unable to find any support for BKI's contention that the way the District Court managed discovery denied BKI a full and fair hearing on Schibanoff's motion for summary judgment. For example, BKI claims that it wrote to the Court requesting additional time for discovery, yet no such correspondence appears in the record. Moreover, as Schibanoff points out, BKI did not make a Rule 56(f) motion in response to his motion for summary judgment, nor does the District Court mention in its summary judgment opinion any complaint by BKI to the effect that it needed additional time for discovery. Finally, in a misguided attempt to support its argument, BKI proffers a tortured interpretation of a portion of the transcript from the June 29, 2006 hearing before the District Court. BKI asserts that the Court's remarks at that time[15] show it was set against permitting appropriate discovery. Instead,

---

[15]The colloquy was as follows:

> MR. KLEIN: It would seem that – and with the new – the joinder of new parties coming in, that we'd need to revisit the discovery cutoff.
> THE COURT: Do I –

> MR. GOLDBLUM: I don't join in a request for a discovery extension, your Honor. Plaintiffs chose to file an amended complaint. We want to move this as quick as possible and get this thing behind us, so I – I can't join in a request for additional discovery time.

> THE COURT: Very well. If it comes to – are you asking me for it now – right now – or are you just –

16

MR. KLEIN: I raise it because –

THE COURT:  – bringing that –

MR. KLEIN:  – as a practical matter, I think it will be an issue, your Honor. I – I'm not proposing anything at this juncture.  I mean, we want it over as fast – we want an expedited process here, too.  But –

THE COURT: You –

MR. KLEIN: – at the same time, we had a right to bring these parties in and we – we did.  It was based on information that was developed in the case. And I think as a practical matter, we're gonna rub up and [past] the current discovery period. ...

THE COURT: Very well.

MR. KLEIN:  – I'm – I'm just raising it because I think as a practical matter it – it will come up. ...

THE COURT: Okay.  I'm not going to address that issue right now.  If it becomes an issue – right now, you have a case management order, I'm expecting to try this case in October.  And I'm going to hold your feet to the fire.

MR. KLEIN: Your Honor, should we make an appropriate motion, if it becomes an issue?

THE COURT: If it becomes an issue, but right now, it's not an issue right?

MR. KLEIN: You know, I – I don't know ...

THE COURT: And you just don't make it an issue.

MR. KLEIN: – but – I'm not trying to, your Honor.  I just predict that there's some variables here.

THE COURT: Very well.

17

however, what the Court actually said is that it would not then address the issue of a discovery extension, but if the necessity of further discovery "bec[ame] an issue," counsel could "make an appropriate motion." (App. at 266-67.) That exchange does not, as BKI would have us believe, "demonstrate[] that the District Court was of no mind to allow BKI an adequate opportunity to obtain discovery." (Appellant Summary Judgment Br. at 53.)

## C. Imposition of Rule 11 Sanctions Against BKI's Counsel

The District Court found that BKI's "claims against Schibanoff were frivolous and grant[ed] sanctions in accordance with [Rule 11]." *Brubaker Sanctions*, 2006 WL 3165010 at *1. BKI argues before us that the District Court abused its discretion because it misapplied the law pertaining to Rule 11 and made "clearly erroneous factual assessments of the evidence." (Appellant Sanctions Br. at 43.) BKI also says that the District Court "bootstrapped a summary judgment analysis into a finding of a Rule 11 violation." *Id*. at 55. Finally, BKI argues that the District Court abused its discretion when it denied BKI's Motion for Reconsideration.

After setting forth a thorough recitation of the law pertaining to Rule 11 and recognizing that "the standard for imposing sanctions under Rule 11 is one of reasonableness under the circumstances," *Brubaker Sanctions*, 2006 WL 3565010, at *2 (citing *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995)), the District Court said:

_____

(App. at 265-67.)

18

> The First Amended Complaint was filed on March [3], 2006, more than three months after the original Complaint was filed and more than one week after a hearing was held on the temporary restraining order. By March [3], 2006, it was unreasonable for counsel to believe Brubaker had a case against Schibanoff. At the hearing, counsel for Brubaker admitted that Schibanoff did not belong in the case. When asked about Schibanoff at the hearing, Berkowitz stated she had no personal knowledge Schibanoff was providing financial support to Ivy Creek. The only substantiated allegation against Schibanoff was that Gochnauer told Laughman Schibanoff had promised to do business with Ivy Creek. Based on this information alone, Brubaker lacked the factual basis to support its claims against Schibanoff.

*Id.* (footnote omitted). The District Court then applied the "reasonable under the circumstances" test and found "that when counsel filed the First Amended Complaint, he knew full well Mr. Schibanoff did not belong in the case."[16] *Id.* The Court imposed sanctions pursuant to Rule 11, and asked Schibanoff to "submit a detailed accounting of his legal expenses" and BKI's counsel "to describe any mitigating circumstances" the Court should consider before awarding Schibanoff attorney's fees. *Id.* at *4.

BKI filed a Motion for Reconsideration, arguing that the Court's decision was based on a transcription error from the hearing on the temporary restraining order. *Brubaker Reconsideration*, 2006 WL 3682180 at *1. Apparently, the statement that "Mr. Schibanoff should [not] be in this case" was made by Brown and Gochnauer's counsel,

---

[16]Our dissenting colleague states that "the majority does not suggest that there was any impropriety in the filing of the original complaint." It is true, since the District Court focused on the filing of the First Amended Complaint, that we have as well, but that should not be viewed as implying that the filing of the original complaint complied with Rule 11. For many of the same reasons we uphold the sanctions associated with the First Amended Complaint, we have our doubts about the propriety of the original filing. That, however, is not an issue we need to reach.

19

not by BKI's counsel. *Id.* at *2. The Court agreed that its "Order granting sanctions should not be based on a transcription error," but pointed out that its finding of a Rule 11 violation was not based "solely on this fact." *Id.* The Court's opinion also said that "[t]he only substantiated allegation against Schibanoff was that Gochnauer told Laughman Schibanoff had promised to do business with Ivy Creek. Based on this information alone, BKI lacked the factual basis to support its claims against Schibanoff." *Brubaker Sanctions*, 2006 WL 3165010 at *2. The District Court then considered additional evidence that was raised in BKI's Motion for Reconsideration,[17] and declined to vacate its Rule 11 order imposing sanctions. *Brubaker Reconsideration*, 2006 WL 3682180 at *5. The Court imposed sanctions of $18,245.90 against Klein and his law firm, Berkowitz Klein, LLP. *Id.* at *7.

The District Court did not misunderstand or misapply the law pertaining to Rule 11. It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court. *Gary v. Braddock Cemetery*, 517

---

[17]As earlier noted, the reconsideration motion was filed by Klein and his law firm, but has been appealed by BKI as well as by Klein and the firm. The additional evidence was of discussions between counsel during the safe-harbor period and Klein's alleged attempts to withdraw the claims against Schibanoff. *Brubaker Reconsideration*, 2006 WL 3682180 at *3-*4. BKI argued that these "informal discussions" should have precluded Schibanoff from filing the motion for sanctions. *Id.* at *4. The Court disagreed, noting that "a party is precluded from brin[g]ing a motion for sanctions only if (1) the opposing party withdraws its position or (2) acknowledges candidly it does not have evidence to support a specified allegation." *Id.* BKI did neither of those things.

F.3d 195, 201 n.6 (3d Cir. 2008); see *also Fellheimer, Eichen & Braverman, P.C. v.*

*Charter Techs., Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995) ("The imposition of Rule 11

sanctions ... requires only a showing of objectively reasonable conduct."). The District

Court did not stray from that reasonableness test, nor did it rely on erroneous facts in

reaching its conclusion that sanctions should be imposed on BKI's counsel. *See Brubaker*

*Reconsideration*, 2006 WL 3682180 at *2 (disregarding statements improperly attributed

to BKI's counsel and pointing out facts to support imposition of sanctions). BKI's

argument that the District Court "bootstrapped a summary judgment analysis into a

finding of a Rule 11 violation" (Appellant Sanctions Br. at 55) is unsupported by the

record. The District Court's opinions regarding Schibanoff's Rule 11 motion do not rely

on the Court's earlier summary judgment opinion. It appears the District Court only

mentioned its summary judgment opinion during the first Rule 11 hearing in an effort to

ascertain from BKI's counsel the factual basis for the claims against Schibanoff.[18]

_____

[18]BKI also argues that the District Court erred by requiring "hard-core facts" as the
only sound basis for filing a complaint. That argument is evidently grounded on the
following exchange, which includes the Court's reference to summary judgment:

> THE COURT: At the time that the complaint was filed, or any subsequent
> time, tell me what facts, not beliefs, not what Rita Berkowitz believes, but
> what facts, concrete facts do you have to support a claim against
> Schibanoff, or his company, because that's a serious matter. You're asking
> somebody to defend in a civil lawsuit, so outline the facts for me, not
> beliefs, but facts, hard-core facts. What are they?
> MR. KLEIN: Aiding and abetting a fiduciary duty. He knew that Brown
> and Gochnauer were management at the company in August of 2005. He
> assisted them with financing. In exchange he got to name his price. That
> sounds a little bit closer that just being a customer. It sounds more like

Finally, the District Court did not abuse its discretion with respect to the Motion for

Reconsideration, as it reopened the record to consider the allegedly new evidence and

then declined to vacate its sanctions order.

We agree with the District Court that, before one levels accusations of tortious and

malign behavior against another person and imposes on that person the financial,

temporal, and emotional strain of defending a federal lawsuit, one had better have more

than a vague belief based on bad feelings and a stray comment that the accused was

"involved." Because we find no abuse of discretion,[19] the District Court's imposition of

---

> you're involved in the business, and it's going to basically bring to the
> business some viable beginning.
> THE COURT: What acts, what facts do you have on the record to conclude,
> or make the argument, that he assisted them with financing, other than the
> letters –
> MR. KLEIN: The letter – the letter –
> THE COURT: – that are mentioned in the granting of the motion for
> summary judgment.

(Joint Appendix "JA" at 577.)

We do not read this discussion as do Klein and the dissent. In context, it appears to us that the District Court was making the unremarkable point that something more than Ms. Berkowitz's subjective feelings about Schibanoff was needed to undergird the allegations leveled against the man. We do not perceive that the Court expected anything more from BKI, Klein, and his firm than what Rule 11 requires, namely, "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).

[19]Application of this standard – abuse of discretion – seems to be the key dividing point between our view and the dissent on the issue of sanctions. We could take issue with some of the specifics of the dissent, such as the implication that there is something telling about Schibanoff's seeking sanctions when Brown and Gochnauer did not. (The distinction between the departing employees and the obliquely "involved" Schibanoff ought not demand elaboration.) But we think our real disagreement is over the standard of review. The Supreme Court has been at pains to remind appellate courts that,

22

particularly in-fact specific inquiries, district courts must be trusted to make difficult decisions, and those decisions should not be rejected simply because appellate judges may view the facts differently from a distance. *Cf. Gall v. United States*, 552 U.S. ___, 128 S.Ct. 586, 597 (2007) (in the context of sentencing, appellate courts must "give due deference to the district court's decision ... . The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."). Indeed, the Supreme Court has emphasized this explicitly in the Rule 11 context. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990) ("Familiar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11.") Nothing in the 1993 amendments to the Rule alters that standard. *See* Advisory Committee Notes to Rule 11, 1993 Amendments ("Whether a violation has occurred and what sanction, if any, to impose for a violation are matters committed to the discretion of the trial court; accordingly, as under current law, the standard for appellate review of these decisions will be for abuse of discretion." (citing *Cooter & Gell*).) We do not doubt that Mr. Klein and his firm are worthy of the supportive comments our colleague extends on their behalf, and nothing we have said should be taken as a general condemnation of those attorneys. Generalities are not at issue. We are not here to question whether their history is, on the whole, good or bad. Our sole responsibility is to assess whether, on this record, the District Court was within its broad discretion in saying that the attorneys' performance failed to meet the

Rule 11 sanctions will be affirmed.

## V.    Conclusion

For the foregoing reasons, we conclude that the District Court properly granted summary judgment in favor of Schibanoff and that the Court did not abuse its discretion in imposing Rule 11 sanctions against BKI's counsel. We will, therefore, affirm.


Brubaker Kitchens, Inc. v. Stephen M. Brown,

Nos. 06-4797, 06-4996, 06-5212


SLOVITER, Circuit Judge, concurring and dissenting.

I concur in the judgment of the majority affirming the grant of summary judgment in favor of Mark Schibanoff. I cannot agree with the majority's affirmance of the imposition of Rule 11 sanctions against the attorneys for Brubaker Kitchens, Inc. ("BKI"). I discuss only the latter issue.

BKI is a manufacturer of custom cabinetry located in Lancaster County, Pennsylvania. Rita Berkowitz is the president of BKI and owns the company with her husband, Gerald Berkowitz. Gerald Berkowitz is a lawyer and partner of Robert Klein. Both Klein and their law firm, Berkowitz Klein, LLP, are the subjects of the Rule 11 sanctions in this case. Klein is a member in good standing in, among others, the

---

"reasonable inquiry" standard of Rule 11. We feel obliged to answer that in the affirmative.

24

Pennsylvania state bar and the United States District Court for the Eastern District of Pennsylvania. Klein clerked for one of the district judges in that district in the 1980s.

On December 19, 2005, two of BKI's top employees, Steven Brown, the general manager, and Dean Gochnauer, the plant manager, resigned and formed a competing company, Ivy Creek. Brown and Gochnauer had each worked at BKI for approximately 20 years. BKI promptly contacted its attorneys, the law firm of Berkowitz Klein. In the nine days that followed, Gerald Berkowitz interviewed BKI employees and learned, inter alia, that Brown and Gochnauer had offered jobs at their new company to key BKI employees and had solicited several of BKI's longtime customers to leave BKI and instead send their orders to Ivy Creek.

Ronald Laughman, a BKI truck driver for eight years, informed Rita Berkowitz that he had been offered a job by Brown and Gochnauer. Rita Berkowitz later testified to her recollection that Laughman told her that Richard Welkowitz and Schibanoff were with Brown and Gochnauer in the Ivy Creek venture. Laughman did not recall mentioning Schibanoff's name. Schibanoff was a former manufacturer's representative for BKI whom Rita Berkowitz terminated several years earlier when she learned he had tried to induce Brown and Gochnauer to leave BKI and join with him in forming a competing company. Also, BKI learned that copies of the BKI Catalogue, which was a copyrighted book of product specifications, policies, procedures, and pricing, were missing, along with tools from the factory and files for prospective customer orders.

It is not surprising that Klein, based on the information available at that time and

25

the need for prompt action, filed a complaint against Brown, Gochnauer, Schibanoff, and Welkowitz, alleging various business torts. BKI sought a temporary restraining order ("TRO") to protect its copyright rights, employees, customers, trade secrets, and confidential business information.

In affirming the District Court's imposition of sanctions on Klein and the law firm, the majority does not suggest that there was any impropriety in the filing of the original complaint. The District Court honed in, instead, on the filing of the First Amended Complaint some two months later because the complaint continued to name Schibanoff as a defendant. It is important to focus on the reasons given by the District Court in its original opinion on Rule 11, which stated "By March [3], 2006, [when the first amended complaint was filed] it was unreasonable for counsel to believe Brubaker [i.e., BKI] had a case against Schibanoff. At the [TRO] hearing, counsel for Brubaker admitted that Schibanoff did not belong in the case." Brubaker Kitchens, Inc. v. Brown ("Brubaker I"), No. 05-6756, 2006 WL 3165010, at *2 (E.D. Pa. Oct. 31, 2006) (emphasis added). Obviously, that purported statement by counsel offended the trial judge, who determined that there was no factual basis for the claim against Schibanoff. But the District Judge was wrong. Neither Klein nor any counsel for BKI made such an "admission."

There was an error in the transcription. That statement was made by one of the defendants' counsel, not plaintiff's counsel. Plaintiff's counsel filed a motion for reconsideration pointing this out. The District Court acknowledged that this was an error, but justified its original order by pointing to what it viewed as the paucity of evidence

26

implicating Schibanoff. See Brubaker Kitchens, Inc. v. Brown ("Brubaker II"), No. 05-6756, 2006 WL 3682180, at *2 (E.D. Pa. Dec. 11, 2006). The majority accepts this explanation, but I am not so inclined. Is it unreasonable to conclude that an original impression, albeit based on incorrect facts, will linger in the mind of a judicial officer?

It was evident that not only had the District Court formed an unfavorable opinion of counsel but in assessing Rule 11 sanctions the Court was operating under an incorrect understanding of the language of Rule 11. In the original opinion imposing sanctions, the District Court stated: "Rule 11 holds that if an attorney filed an offending document, then the 'court . . . shall impose upon the person who signed it . . . an appropriate sanction . . . .'" Brubaker I, 2006 WL 3165010, at *3 (emphasis added). That opinion was dated October 31, 2006. By 1993, Rule 11 had been amended to delete "shall impose" and to substitute "may" impose. Compare Fed. R. Civ. P. 11 (1983), with Fed. R. Civ. P. 11(c)(1) (1993). See also Knipe v. Skinner, 19 F.3d 72, 78 (2d Cir. 1994) (remanding because, "under the amended version, the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory").

By the time Rule 11 was amended in 1993, it had become the subject of considerable discussion. As the advisory committee notes to the 1993 amendments state, "[t]his revision is intended to remedy problems that have arisen in the interpretation and application of the 1983 revision of the rule. . . . The revision . . . places greater constraints on the imposition of sanctions and should reduce the number of motions for sanctions presented to the court." Fed. R. Civ. P. 11 advisory committee notes.

27

Even after plaintiff's counsel filed the motion for reconsideration, the District Court persisted in its inaccurate statement of Rule 11, repeating in its December 11, 2006 opinion, "[a]s discussed in my previous memorandum, Rule 11 holds if an attorney files an offending document, the court <u>shall impose an appropriate sanction</u> . . . ." <u>Brubaker II</u>, 2006 WL 3682180, at *5 (emphasis added). As I noted, Rule 11 states no such thing.

Finally, it appears that the District Court was operating under a misconception of the standard to be applied in evaluating the allegedly offending legal document. During the hearing on the Rule 11 motion, the Court stated that Klein seemed to be questioning the wisdom of its decision on the motion for summary judgment, and directed Klein to state "what facts, not beliefs, not what Rita Berkowitz believes, but what facts, <u>concrete facts do you have to support a claim against Schibanoff, or his company</u>," and reiterated the need to state "not beliefs, but facts, hard-core facts." App. at 577 (emphasis added).

Of course, by the time a matter is ripe for summary judgment, plaintiff must be in a position to provide facts, not merely beliefs. But the District Court was questioning about "hard-core facts" in the context of a Rule 11 hearing intended to determine whether plaintiff's counsel had sufficient information to warrant filing a complaint, or an amended complaint. Rule 11 does not impose that standard on counsel. Although the attorney's responsibility is to conduct "a reasonable inquiry into the law and facts before signing pleadings," Fed. R. Civ. P. 11 advisory committee notes, the advisory committee made clear that the summary judgment standard is inapplicable. Indeed, the commentary explicitly states, "[t]hat summary judgment is rendered against a party does not

28

necessarily mean, for purposes of this certification, that it had no evidentiary support for its position." Id. See Teamsters Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66, 69 (3d Cir. 1988) ("Rule 11 may not be invoked because an attorney, after time for discovery, is unable to produce adequate evidence to withstand a motion for summary judgment.").

This was not a complaint (or amended complaint) filed without discussion with the client. Klein (and/or his partner Berkowitz) spoke to Rita Berkowitz at some length before filing the complaint. She advised her attorneys of the basis for her belief that Schibanoff was "involved." After all, Schibanoff does not emerge from this scenario smelling like a rose. He had previously tried to entice Brown and Gochnauer away from BKI. I do not discount the possibility that he retained at least some animosity toward Rita Berkowitz and/or BKI for terminating his relationship with them, and his attorney did not make any serious effort to respond to Klein's offer to dismiss Schibanoff from the case. It is true, as the District Court suggests, that Berkowitz Klein may have overreached in asking for a quid pro quo. But nothing in the record shows that Schibanoff was sincerely interested in reaching an accommodation. Only Schibanoff, who had been terminated years before, sought Rule 11 sanctions – not Brown, not Gochnauer.

I do not disagree with the majority that our standard of review of the District Court's imposition of sanctions is abuse of discretion. But that standard does not emasculate the courts of appeals in appeals of sanctions. "A district court abuses

29

its discretion when it misinterprets Rule 11 or clearly errs in assessing the evidence." CTC Imps. & Exps. v. Nigerian Petroleum Corp., 951 F.2d 573, 577 (3d Cir. 1991) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)). This court has not hesitated to review, and to reverse, the imposition of sanctions when it has been convinced that the district courts abused their discretion. See, e.g., Schering Corp. v. Vitarine Pharm., Inc., 889 F.2d 490, 500 (3d Cir. 1989) (imposition of sanctions was abuse of discretion where plaintiffs adequately investigated the basis of their assertions); Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 95 (3d Cir. 1988) (reversing entry of sanctions because "[a] requirement that counsel, before filing a complaint, secure the type of proof necessary to withstand a motion for summary judgment would set a pre-filing standard beyond that contemplated by Rule 11"). The same is true of the other courts of appeals. See, e.g., Krim v. BancTexas Group, Inc., 99 F.3d 775, 777-80 (5th Cir. 1996) (entry of sanctions was abuse of discretion where plaintiff had no practical alternative to discovery to uncover facts); Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1329-30 (2d Cir. 1995) (imposition of sanctions was abuse of discretion where attorney reasonably relied upon client's representations); Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439, 444-46 (5th Cir. 1992) (entry of sanctions for alleged failure to reasonably investigate claim was an abuse of discretion ); Fed. Sav. & Loan Ins. Corp. v. Molinaro, 923 F.2d 736, 739 (9th Cir. 1991) ("claims of conspiracy . . . were not so groundless as to warrant the imposition of sanctions").

I do not intend to minimize an attorney's responsibility under the Rules to make

30

reasonable inquiry. I do not believe the facts in this case warranted imposition of Rule 11 sanctions against an attorney who has never previously been the subject of any sanction and whose only misdeed was his belief in his long-term client's recitation of the circumstances. I dissent because it is my view that the District Court abused its discretion in this instance.